TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00081-CR







Tettus Davis, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 04-122-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Tettus Davis guilty of possessing more than four grams of
cocaine with intent to deliver. See Tex. Health & Safety Code Ann. § 481.112 (West 2003). The
jury assessed punishment, enhanced by a previous felony conviction, at seventy-five years'
imprisonment. Davis contends that the evidence is legally and factually insufficient to sustain the
guilty verdict, an accomplice witness's testimony was not corroborated, and a recorded telephone
conversation was erroneously admitted. (1) We will affirm the conviction.

On December 9, 2003, police officers executed a search warrant at a Georgetown
apartment. Jenny Garza, the tenant, was in the living room when the officers entered. Davis, an
overnight guest, was in the bedroom. The officers found marihuana on the kitchen table, on the
living room coffee table, and in the bedroom closet. The officers also found in the kitchen a cigar
box containing razor blades and a package of small plastic bags approximately one inch square. 
Another razor blade, which field tested positive for cocaine, was found in the bedroom. Officers
testified that razor blades are used to cut cookies of crack cocaine, and that the pieces are often
packaged for sale in plastic bags of the sort found in the apartment. No drugs or drug paraphernalia
were found in Davis's car, which was parked outside the apartment.

Davis told the officers that the marihuana in the apartment belonged to him. 
Referring to the plastic bags, Davis said, "Yeah, I use those for my dope, to sell my dope, but you're
not going to find any dope here. I don't sleep with any dope. A good businessman doesn't sleep
with his dope." An officer understood Davis to be referring to cocaine. Davis made similar remarks
while being driven to the jail following his arrest for marihuana possession.

Garza was also arrested. She told the police that Davis was a drug dealer, and that
he kept his cocaine inside a building in downtown Georgetown that once housed a cafe called the
Dew Drop Inn. The building was owned by Davis's grandmother, Thedius Hutchison, who had
operated the cafe with her husband until his death. The business had been closed for about ten years,
and the building was used for storage by various members of the family. Garza told the police that
she believed that Davis kept his drugs some place to the right of the front door of the building.

Mary Anderson, Hutchison's daughter and Davis's aunt, lived across the street from
the Dew Drop Inn. Anderson, who had Hutchison's power of attorney, gave the police her written
consent to search the building. Anderson did not have a key, but an officer was easily able to open
the front door with a credit card. To the right of the door, the officers saw a box of clothing sitting
on a pool table. Underneath the clothes, they found both powder and crack cocaine packaged in
small plastic bags as if for sale. The cocaine weighed 35.44 grams and had an estimated street 

value of $6000.

 The evidence at trial showed that the yard outside the Dew Drop Inn was a regular
gathering place for Davis and his friends. Garza testified that she had been there with Davis on
several occasions and had observed him taking cocaine inside the building. According to Garza,
Davis would enter the building, go to his right, then quickly come out. Garza said that Davis
referred to the inn as "my cafe." A key ring found in Garza's apartment and later identified as
belonging to Davis had two keys fitting the lock on the building.

Garza testified that on the night before the raid on her apartment, she had seen Davis with one or
two ounces of cocaine. She had also overheard a telephone conversation in which Davis mentioned
the cafe. After the conversation ended, Davis left the apartment taking the cocaine with him. Garza
testified that two days after the search, she found rocks of crack cocaine inside the shower rod in
her bathroom. She said she flushed them down the toilet.

 The State also introduced in evidence recordings of several telephone calls Davis
made from the jail to Garza and her mother. During one of these calls, Davis urged Garza's mother
to "tell her to move everything around, to do something with it." Later, in a conversation with
Garza, Davis asked if she had found "that stuff." When Garza replied that she had, Davis said, "Ah,
good." In another telephone call from the jail, Davis told Garza to give "the tube" to "Brock,"
saying he needed money for his lawyer. Davis also instructed Garza to collect $200 from "David"
and $135 from "Mason." Referring to the Dew Drop Inn, Davis told Garza that "they didn't see me
put anything there. You know, they can't get me with it." He also told her, "They didn't catch me
with that. My name ain't nowhere on that house." 

 When there is a challenge to the sufficiency of the evidence to sustain a criminal
conviction, the question presented is whether a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. In a legal sufficiency review, all the evidence
is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved
conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that
supports the verdict. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614
S.W.2d 155, 158-59 (Tex. Crim. App. 1981). In a factual sufficiency review, all the evidence is
considered equally, including the testimony of defense witnesses and the existence of alternative
hypotheses. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Orona v. State, 836
S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). Although due deference still must be
accorded the fact finder's determinations, particularly those concerning the weight and credibility
of the evidence, the reviewing court may disagree with the result in order to prevent a manifest
injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence
supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust,
or if the verdict is against the great weight and preponderance of the available evidence. Watson
v. State, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *30-31 (Tex. Crim. App. Oct. 18,
2006); Johnson, 23 S.W.3d at 11.


 To convict a person of drug possession, the State must prove that the defendant
exercised care, custody, control, or management over the drugs and that he knew he possessed a
controlled substance. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Martinets v.
State, 884 S.W.2d 185, 187 (Tex. App.--Austin 1994, no pet.). When the defendant is not in
exclusive possession or control of the place where the drugs are found, the State must affirmatively
link him to the drugs. Brown, 911 S.W.2d at 747-48; Martinets, 884 S.W.2d at 187. Whether the
evidence is direct or circumstantial, "it must establish, to a requisite level of confidence, that the
accused's connection with the drug was more than just fortuitous." Brown, 911 S.W.2d at 747. 
Circumstantial evidence often has equal or even greater probative value than direct evidence. 
Goodman v. State, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001).

 Seldom will any single factor have logical force sufficient to link the accused with
the drugs and hence to sustain a conviction. Hall v. State, 86 S.W.3d 235, 240 (Tex. App.--Austin
2002, pet. ref'd). Instead, the required link generally emerges from the logical force that several
factors have in combination. Id. Ultimately, the question of whether the evidence is sufficient to
affirmatively link the accused to the contraband must be answered on a case-by-case basis. 
Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd).

 In this case, the following evidence suggests that Davis knowingly exercised care,
custody, and control of the cocaine found at the Dew Drop Inn:


Following his arrest at Garza's apartment, Davis freely admitted being a drug dealer
but told the police that he was too smart to keep his dope where he sleeps.


Davis told the police that he used the small plastic bags found at the apartment to
package his dope for sale.


The Dew Drop Inn building was owned by Davis's grandmother, he had keys to the
building, and he and his friends often gathered outside the building. Davis referred
to the Dew Drop Inn as "my cafe."


On several occasions, Garza had seen Davis take cocaine into the Dew Drop Inn and
place it somewhere to the right of the front door. The cocaine was found in a box
sitting on a pool table located to the right of the front door.


On the night before his arrest, Garza saw Davis in possession of cocaine at her
apartment. Following a telephone conversation in which he referred to his cafe,
Davis left the apartment, taking the cocaine with him.


In telephone calls to Garza from the jail, Davis asserted that the police could not
connect him with the cocaine at the Dew Drop Inn because they did not see him put
anything there.



Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact 
could find beyond a reasonable doubt that Davis knowingly possessed the cocaine found at the Dew
Drop Inn. Point of error one is overruled.

Although the existence of reasonable alternative hypotheses other than guilt is not a
factor in legal sufficiency analysis, it is relevant to a factual sufficiency analysis. Compare Brown,
911 S.W.2d at 748, with Orona, 836 S.W.2d at 321. The evidence shows that persons regularly
congregated outside the Dew Drop Inn. The building was used for storage by Davis's family, and
several family members, in addition to Davis, had keys. Moreover, the building was hardly secure;
a police officer easily opened the front door with a credit card. None of the non-contraband found
inside the building, including the clothing used to conceal the cocaine in the cardboard box, was
shown to belong to Davis. A fingerprint was found on one of the bags of cocaine, but it was not
Davis's. While it is conceivable that the cocaine found by the police belonged to someone other than
Davis, we must respect the jury's determination regarding the weight to ascribe to the various pieces
of relevant evidence. Considering all the evidence, both incriminating and exculpatory, in a neutral
light, we hold that the finding of guilt beyond a reasonable doubt was not clearly wrong, manifestly
unjust, or contrary to the great weight and preponderance of the available evidence. Point of error
two is overruled.

Davis's third point of error concerns Garza's status as an accomplice witness. See
Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005) (accomplice witness rule). The court submitted
this question to the jury as an issue of fact. That is, the jury was told to determine if Garza was an
accomplice witness as a condition precedent to the corroboration requirement. Davis asserts that
Garza was an accomplice as a matter of law and that the evidence is not sufficient tocorroborate her testimony. 

 An accomplice is one who participates with the defendant before, during, or after the
commission of the charged offense with the requisite culpable mental state. Paredes v. State, 129
S.W.3d 530, 536 (Tex. Crim. App. 2004). Participation requires an affirmative act that promotes
the commission of the offense. Id. Neither presence at the scene nor knowledge of the crime is
sufficient to make an individual an accomplice. Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim.
App. 1998). If the evidence clearly shows that the witness was a blameworthy participant in the
crime, the court must instruct the jury that the witness is an accomplice as a matter of law. Id. at
454-55. But if the evidence is conflicting or unclear regarding the witness's participation in the
crime, it is proper to submit the question of the witness's status to the jury as an issue of 

fact. Id. at 455.

 Garza clearly knew that Davis was a drug dealer and that he stored his contraband at
the Dew Drop Inn. There is no evidence, however, that Garza engaged in any affirmative act by
which she exercised care, custody, or control over the cocaine in question, and she was not indicted
for this offense. Moreover, Davis did not object to the charge as given or request that the jury be
instructed that Garza was an accomplice as a matter of law. Under the circumstances, the trial court
did not egregiously err by allowing the jury to determine as a question of fact whether Garza was or
was not an accomplice witness. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh'g). Finally, Davis's access to the Dew Drop Inn and his own statements, both to the
police and during the recorded telephone calls, tend to connect him to the offense and are sufficient
to satisfy the corroboration requirement. See Cathey v. State, 992 S.W.2d 460, 462-63 (Tex. Crim.
App. 1999) (burden of proof under article 38.14). For all of these reasons, point of error three is
overruled.

 By point of error four, Davis claims that there is no evidence that the suspected
contraband found at the Dew Drop Inn was in fact cocaine. The record shows, however, that the
seized substances were submitted to the department of public safety laboratory for analysis. The
chemist who conducted this analysis testified that the baggies contained cocaine. Point of error

four is overruled.

 In his final point of error, Davis urges that the trial court erred by admitting irrelevant
and unfairly prejudicial statements he made to Garza during one of the recorded telephone calls from
the jail. At a pretrial hearing, the State described the remarks as follows:


Basically in one small segment he starts off and says, "You're goddamn--I'm
going to tell the jury, 'You're goddam right I'm a drug dealer. But you didn't catch
me with nothing.' And what I'm going to do is I'm going to pick nine bitches and
'hoes on my jury when I pick my jury. All I need is one bitch or one 'hoe, and you
know how I am with the bitches and the 'hoes."



Over Davis's objections, the court permitted the State to introduce the challenged recording during
the guilt-innocence stage, but with the words "bitches" and "'hoes" redacted. (2) After the redacted
recording was played for the jury, a police officer read a transcription into the record, with "ladies"
substituted for the more offensive terms:


Tettus Davis: And out of the 12 jurors, you know me, when I pick my jurors,
I'm going to have me at least goddamn nine ladies on there. And out of nine ladies,
I know I can get one to give me a vote. You know what I'm saying? And I have in
quotations that he's laughing.


Jenny Garza then says: Shut up.


Tettus Davis says: I'm for real. I told--and then there was a word that was
unintelligible. Shit. I'll be able to just eye them ladies like, yes, baby, just--and
another word that's unintelligible. And if I can get one out of 12, I win. You know
what I'm saying? That's all I need is one out of 12. I know, baby, if I get mother
fuckin' nine ladies on the witness stand--I mean in the jury box--


And then Jenny Garza says: Shut up. I don't want to hear it.


And Tettus Davis laughing says: For real, baby. It's going to be gravy.



Davis argues that this evidence had no tendency to make any fact of consequence to
the case more probable than it would have been without the evidence. See Tex. R. Evid. 401
(defining "relevant evidence"). Davis further argues that any relevance the evidence might have had
was substantially outweighed by the danger of unfair prejudice. See id. rule 403. The State responds
that "[Davis's] plan to improperly stack the jury with women, because he believed he could charm
a jury of women, was relevant in that it showed [his] gimmick-oriented mindset toward his
upcoming trial" and "evidenced his consciousness of guilt."

Broadly speaking, the decision to admit or exclude evidence is committed to the trial
court's discretion. Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on
reh'g). In this instance, we believe that this discretion was abused. Davis's exaggerated belief in
his ability to charm female jurors may have shown that he did not fully appreciate the seriousness
of his situation, but it did not reflect a guilty conscience or otherwise tend to prove that Davis
knowingly possessed cocaine at the time and place in question. The trial court wisely required the
redaction of Davis's offensive references to women before admitting the recording and, by so doing,
removed much of the unfair prejudice from the evidence. But even as redacted, the residual
prejudice attaching to Davis's remarks outweighed their minimal relevance.

We must determine whether the erroneous admission of the evidence had a substantial
and injurious effect or influence in determining the jury's guilty verdict. Tex. R. App. P. 44.2(b);
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not restate all the evidence,
but will simply note that Davis was an admitted drug dealer who bragged to the police and his
girlfriend that he was too clever to be caught possessing his unlawful goods. Davis had access to
the Dew Drop Inn, the place where the cocaine was found, and considered it to be "his cafe." He
was often seen taking cocaine into the building. Following the discovery of the cocaine, Davis
expressed his mistaken confidence that the police would be unable to connect him with it. During
jury argument, there was only one brief reference to Davis's plan to pack the jury with women. 
Considering the record as a whole, we conclude that the erroneous admission of this evidence did
not affect Davis's substantial rights. Point of error five is overruled.

The judgment of conviction is affirmed. (3)



 ______________________________Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: October 31, 2006

Do Not Publish
1. Davis's appointed attorney filed a brief to which is appended a pro se brief prepared by Davis. 
Counsel states that Davis "directed" her to withdraw from the appeal and file his pro se brief. Points
of error one, two, and three were briefed by appellant and adopted by counsel. Point of error four
was briefed by appellant, but counsel is of the opinion that it is frivolous. Point of error five was
briefed by counsel.
2. The unredacted recording was played for the jury at the punishment phase. Davis does not
complain of this on appeal.
3. All pending motions are dismissed.